FILED
2026 Mar-03  AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| STOCKTON MORTGAGE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-01840-LCB |
| | ) | |
| IXONIA BANCSHARES, INC. d/b/a NOVUS | ) | |
| HOME MORTGAGE, | ) | |
| LOGAN HOFFMAN, ERIC WAGNER, | ) | |
| CHRIS HOEHN, AMBER OREAR, | ) | |
| ADAM GOODE, JERRY BRYANT, | ) | |
| ELIZABETH  HARRELL, AMANDA LEOPARD, | ) | |
| SARA KIDD, KIM SHERRELL, | ) | |
| EMMA AMARA, ASHLEY HOEHN, | ) | |
| LESLIE SWEARENGIN, ELLIOT FARMER, | ) | |
| JENNIFER DETULLEO, | ) | |
| ELIZABETH BLAGBURN, BRANDI MCEWEN | ) | |
| and SHERRY DOUGHTERY. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED VERIFIED COMPLAINT

Plaintiff, STOCKTON MORTGAGE CORPORATION ("SMC"), by its undersigned attorneys, states as follows for its Second Amended Verified Complaint against Defendants, IXONIA BANCSHARES, INC. d/b/a NOVUS HOME MORTGAGE ("Ixonia" or "Novus") and LOGAN HOFFMAN ("Hoffman"), ERIC WAGNER ("Wagner"), CHRIS HOEHN ("C. Hoehn"), AMBER O'REAR ("O'Rear"), ADAM GOODE ("Goode"), JERRY BRYANT ("Bryant"), ELIZABETH HARRELL ("Harrell"), AMANDA LEOPARD ("Leopard"), SARA KIDD ("Kidd"), KIM SHERRELL ("Sherrell"), EMMA AMARA ("Amara"), ASHLEY HOEHN ("A. Hoehn"), LESLIE SWEARENGIN ("Swearengin"), ELLIOT FARMER ("Farmer"), JENNIFER DETULLEO ("Detulleo"), ELIZABETH BLAGBURN ("Blagburn"), BRANDI MCEWEN ("McEwen"), and SHERRY DOUGHERTY ("Dougherty") (collectively, the "Former

1

Employees") (the Former Employees and Novus are collectively referred to herein as "Defendants"):

## INTRODUCTION

1.      This case stems from a nefarious conspiracy  of several former SMC employees who, *while still employed at SMC* and in concert with Novus, diverted active and prospective SMC clients to Novus in violation of the restrictions in their employment agreements and in contravention of their fiduciary duty of loyalty. In the course of their illicit actions, Defendants stole SMC's intellectual property, as well as confidential and proprietary borrower data, resulting in the tortious interference with SMC's actual and expected business relationships. The Former Employees then defected *en masse* to Novus, where they continue to breach their contractual obligations of non-solicitation and confidentiality. Novus was not just complicit in this scheme, but actively aided and encouraged the Former Employees in breaching their duties, despite Novus knowing they were still employed by and had legal duties to SMC.

## PARTIES

2.      Stockton Mortgage Corporation ("SMC") is a Kentucky corporation with its principal place of business in Frankfort, Kentucky.

3.      Novus Home Mortgage is a division of Ixonia Bancshares, Inc., which is a Wisconsin corporation with its principal place of business in Ixonia, Wisconsin.

4.      Hoffman is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

5.      Wagner is an individual who resides in Madison County, Alabama and previously worked for SMC in  Madison County, Alabama.

6.      C. Hoehn is an individual who resides in Madison County, Alabama and previously

worked for SMC in Madison County, Alabama.

7.  O'Rear is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

8.  Goode is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

9.  Bryant is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama

10.  Harrell is an individual who resides in DeSoto County, Mississippi and previously worked for SMC in Madison County, Alabama.

11.  Leopard is an individual who resides in St. Clair County, Alabama and previously worked for SMC in Etowah County, Alabama

12.  Kidd is an individual who resides in Etowah County, Alabama and previously worked for SMC in Etowah County, Alabama.

13.  Sherrell is an individual who resides in Etowah County, Alabama and previously worked for SMC in Etowah County, Alabama.

14.  Amara is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

15.  A. Hoehn is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

16.  Swearengin an individual who resides in Etowah County, Alabama and previously worked for SMC in Etowah County, Alabama.

17.  Farmer is an individual who resides in Morgan County, Alabama and previously worked for SMC in Madison County, Alabama.

3

18.     Detulleo is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

19.     Blagburn is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

20.     McEwen is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

21.     Dougherty is an individual who resides in Madison County, Alabama and previously worked for SMC in Madison County, Alabama.

## JURISDICTION AND VENUE

22.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because SMC's federal Defend Trade Secrets Act claim, brought under 18 U.S.C. § 1836, et. seq. raises a federal question. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

23.     This Court also has subject matter jurisdiction over this case pursuant to  28 U.S.C. § 1332(a) because it is an action between citizens of different states, and the amount in controversy exceeds $75,000.

24.     This Court has personal jurisdiction over Hoffman, Amara, A. Hoehn, C. Hoehn, Sherrell, Kidd, Leopard, Goode, Wagner, O'Rear, Swearengin, Bryant, and Farmer because they are each residents of Alabama and committed the tortious acts identified herein in Alabama.

25.     This Court has personal jurisdiction over Harrell because she reported to and worked for an Alabama branch of SMC and committed the tortious acts identified herein in Alabama.

26.     This Court has personal jurisdiction over Novus because it regularly transacts

business in Alabama, maintains offices in the Alabama cites of Huntsville, Madison, and Rainbow City, and committed the tortious acts identified herein in Alabama.

27.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants (besides Novus and Harrell) reside in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### I.     The Mortgage Lending Operations Business.

28.     SMC is a leading mortgage lender providing a wide range of financing options for homebuyers throughout the United States.

29.     Novus is a competing mortgage lender that provides similar services to residential homebuyers throughout the United States.

30.     Novus and SMC are direct competitors in the highly competitive residential mortgage business.

### II.     SMC's Confidential Information and Trade Secrets.

31.     In conducting its business, SMC maintains proprietary data related to its actual and prospective borrowers and their mortgage loan needs, which include confidential personal information, such as social security numbers, credit history and score, employment details, assets and liabilities, bank statements, tax returns and other financial data and records.

32.     SMC has also developed and implemented proprietary and highly confidential mortgage loan related pricing and loan programs.

33.     SMC takes several steps to protect the confidentiality of its business data and records, such as maintaining numerous policies in its Employee Handbook relevant to information security, including but not limited to: a Password Protection policy that requires each employee to

5

use a password to access their workstation, an Offsite Data Security policy that requires employees offsite employees to ensure the protection of proprietary information, and a Confidential Information policy that prohibits individuals from removing or making copies of SMC records without express approval and warns that unauthorized disclosure of confidential information could lead to termination.

34.    Additionally, SMC requires all employees to sign an employment agreement with confidentiality restrictions and maintains rigorous user access controls and network security protocol to safeguard its information.

### III.    SMC Hires and Trains Hoffman.

35.    On May 25, 2023, SMC hired Hoffman as the non-loan-originating branch manager to manage the operations of certain Madison-area SMC branches, including the branches located at: (a) 809 Shoney Drive, Suite 108, Huntsville Alabama; (b) 228 Holmes Avenue, 2nd Floor Suite A, Huntsville, Alabama; (c) 4205 Balmoral Drive, Huntsville, Alabama; (d) 63A Town Center Drive, Huntsville, Alabama; (e) 37 Hughes Road, Madison, Alabama; and (f) 116 Church Street, Rainbow City, Alabama (the "Hoffman Branches").

36.    In his role, Hoffman did not originate loans in his own name, but oversaw a team of licensed loan originators and other employees working out of the Hoffman Branches who originated and set up residential mortgage loans on behalf of SMC.

37.    As part of his employment, SMC provided Hoffman with management training and other education and know-how about various industry topics such as sales, products, and compliance.

38.    At the time of his hire, on May 25, 2023, Hoffman and SMC entered into a Non-Producing Branch Manager Employment Agreement (the "Manager Agreement"), a copy of which

is attached as **<u>Exhibit A</u>**.

39.     Pursuant to the Manager Agreement, Hoffman agreed that during his employment, he would "assist and work for only [SMC] and no other employer engaged in mortgage lending, mortgage brokerage, loan processing or underwriting services, credit repair, credit counseling, borrower assistance, or other business service of the same or similar nature." Ex. A at § 1.4.

40.     The Manager Agreement provides that it was Hoffman's "obligation and responsibility to ensure that all loans initiated and handled by Branch Employees while employed by [SMC], and all related information, at all times remain[ed] the sole and exclusive property of [SMC]." Ex. A at § 3.2.

41.     The Manager Agreement also contains certain restrictive covenants.

42.     For example, the Manager Agreement contains a Non-Disclosure clause, which provides as follows:

> (i)     At any time during the term of this Agreement and thereafter, except as required by law, Employee shall not disclosure Confidential Material to any person or entity, either inside or outside of Company, other than as necessary in carrying out the business of Company, without first obtaining Company's prior written consent…
>
> (ii)     At any time during the term of this Agreement and thereafter, Employee shall not sue, copy or transfer Confidential Material other than as necessary in carrying out the business of Company, without first obtaining Company's prior written consent.

Ex. A at § 5.1(c)(i)-(ii).

43.     The Manager Agreement defines "Confidential Material" as:

> …information which is available to or used in the business of Employee and (i) is proprietary to, about, or created by Company; (ii) gives Company a competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which would be detrimental to the interests of Company; or (iii) is designated as Confidential Material by Company, is known by Employee to be considered confidential by Company, or from all the

7

relevant circumstances should reasonably be assumed by Employee to be confidential and proprietary to Company.

Ex. A at § 5.1(a).

44.    The Manager Agreement includes a non-exhaustive list of items that constitutes

Confidential Materials, such as:

(ix)    customer leads, customer lists, customer information and other customer data, including customer requirements, plans, names, addresses (physical, mailing and email) and telephone and fax numbers; and

(x)    Confidential and proprietary information about any actual or potential customer or consumer, or other third party (including businesses, consultants, and other entities and individuals), which shall include, without limitation, all of a consumer's or customer's "non-public personal information," as that term is defined under the Gramm-Leach-Bliley Act of 1999 and any amendments thereto.

Ex. A at § 5.1(a)(ix)-(x).

45.    The Manager Agreement also contains a clause barring Hoffman from  soliciting

SMC employees:

*Non-Solicitation*. In order to protect and preserve Company's Confidential Materials and Company's significant investment in developing its business, which investment Employee hereby acknowledges, commencing as of the date hereof and for a period of two (2) years following cessation of Employee's employment with Company (the "Limited Period") Employee shall not, directly or indirectly, separately or in association with others, interfere, disrupt, or damage Company's business by soliciting, recruiting, attempting to recruit, or causing or assisting in the recruitment or attempted recruitment of, any then-current employee of Company, or any individual who has served in any such capacity at any time within the twelve (12) month period immediately prior thereto, for employment with another person or entity.

Ex. A at § 5.2(a).

46.    Similarly, the Manager Agreement contains a clause prohibiting Hoffman from

soliciting certain SMC customers:

> *Non-Solicitation of Consumer Clients, Mortgage Brokers, Banks, Credit Unions and any TPO Business Clients.* In order to protect and preserve Company's Confidential Materials, and Company's significant investment in developing its client-base and business, which investment Employee hereby acknowledges, during the Limited Period, unless prohibited by applicable law, Employee shall not, directly or indirectly, separately or in association with others, solicit or attempt to solicit any consumer client of Company or business client of Company...that has or had an arrangement with Company at any time within the twelve (12) month period immediately prior thereto. Employee also agrees not to encourage or induce any third party to cease doing business with Company, or in any way interfere with the relationship between any such third party and Company (including without limitation, making any negative or disparaging statements or communications regarding the Company or its employees).

Ex. A at § 5.2(d).

47.    Under the terms of the Manager Agreement, any violation of the foregoing restrictive covenants during the Limited Period automatically tolls the Limited period from the date of the first breach and all subsequent breaches, until the resolution of the breach through private settlement, judicial or other action. Ex. A at § 5.2(e).

48.    In agreeing to the terms of the Manager Agreement, Hoffman acknowledged that any breach of the foregoing covenants would cause irreparable harm to SMC and that SMC shall be entitled to injunctive relief without the need to post bond. Ex. A at § 5.4.

49.    The Manager Agreement required Hoffman to, at the end of his employment, "promptly deliver to Company (or its designee) all written materials, records, software, and documents (whether in electronic of hard copy form) made by Employee or which came into his/her possession prior to or during the term of [his employment], concerning the business and affairs of Company, including without limitation, all materials containing Confidential Material." Ex. A at § 5.1(c)(iii).

**IV.    SMC Hires and Trains the Other Former Employees.**

50.    On May 25, 2023, SMC hired Amara as a Loan Originator Assistant in the Huntsville, Alabama branch. In consideration for her employment, Amara executed an Employment Agreement, a copy of which is attached as **Exhibit B**.

51.    On May 28, 2024, SMC hired A. Hoehn as a Loan Officer in the Huntsville, Alabama branch. In consideration for her employment, A. Hoehn executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit C**.

52.    On November 1, 2024, SMC hired C. Hoehn as a Loan Officer in the Huntsville, Alabama branch. In consideration for his employment, C. Hoehn executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit D**.

53.    On May 24, 2023, SMC hired Goode as a Loan Officer in the Huntsville, Alabama branch. In consideration for his employment, Goode executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit E.**

54.    On January 27, 2025, SMC hired Wagner as a Loan Officer in the Huntsville, Alabama branch. In consideration for his employment, Wagner executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit F**.

55.    On May 20, 2024, SMC hired Harrell as a Loan Originator Assistant in the Huntsville, Alabama branch. In consideration for her employment, Harrell executed a Stockton Mortgage Employment Agreement, a copy of which is attached as **Exhibit G**.

56.    On September 3, 2024, SMC hired O'Rear as a Loan Officer in the Huntsville, Alabama branch. In consideration for her employment, O'Rear executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit H**.

57.    On September 21, 2023, SMC hired Swearengin as a Loan Processor in the

Rainbow City, Alabama branch. In consideration for her employment, Swearengin executed an Employment Agreement, a copy of which is attached as **Exhibit I**. As a Loan Processor, Swearengin was responsible for obtaining confidential information from borrowers, organizing confidential loan documents, and assisting Loan Originators to help get the loans set up.

58.     On November 27, 2023, SMC hired Sherrell as a Producing Branch Manager in the Rainbow City, Alabama branch. In consideration for her employment, Sherrell executed a Branch Manager Employment Agreement, a copy which is attached as **Exhibit J**. As a Producing Branch Manager, Sherrell was responsible for originating new loans and also oversaw Loan Originators at her branch.

59.     On September 22, 2023, SMC hired Kidd as a Loan Officer in the Rainbow City, Alabama branch. In consideration for her employment, Kidd executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit K.**

60.     On September 26, 2023, SMC hired Leopard as a Loan Officer in the Rainbow City, Alabama branch. In consideration for her employment, Leopard executed a Loan Officer Employment Agreement, a copy of which is attached as **Exhibit L**.

61.     On May 24, 2023, SMC hired Bryant as the Senior Vice President of Business Development in the Huntsville, Alabama branch. In consideration for his employment, Bryant executed a Senior Business Development Executive Employment Agreement, a copy which is attached as **Exhibit M**.

62.     On June 26, 2023, SMC hired Farmer as a Loan Officer in the Huntsville, Alabama branch. In consideration for his employment, Farmer executed a Loan Officer Employment Agreement, a copy which is attached as **Exhibit N**.

63.     On September 27, 2023, SMC hired Detulleo as a Loan Officer in the Huntsville,

11

Alabama branch. In consideration for her employment, Detulleo executed a Loan Officer Employment Agreement, a copy which is attached as **Exhibit O**.

64. On December 15, 2023, SMC hired Blagburn as a Loan Officer in the Huntsville, Alabama branch. In consideration for her employment, Blagburn executed a Loan Officer Employment Agreement, a copy which is attached as **Exhibit P**.

65. On June 19, 2023, SMC hired McEwen as a Loan Officer in the Huntsville, Alabama branch. In consideration for her employment, McEwen executed a Loan Officer Employment Agreement, a copy which is attached as **Exhibit Q**.

66. On July 15, 2024, SMC hired Dougherty as a Loan Officer in the Huntsville, Alabama branch. In consideration for her employment, Dougherty executed a Loan Officer Employment Agreement, a copy which is attached as **Exhibit R.**

67. The aforementioned contracts of Amara, A. Hoehn, C. Hoehn, Goode, Wagner, Harrell, O'Rear, Swearengin, Sherrell, Kidd, Bryant, Farmer, Leopard, Detulleo, Blagburn, McEwen, and Dougherty contained identical terms relating to loyalty, confidentiality, non-disclosure, non-solicitation of employees, and non-solicitation of customers as those previously recited herein in Hoffman's Manager Agreement. Accordingly, all Former Employees agreed to the duty of loyalty clause recited in Paragraph 39 of this Second Amended Verified Complaint, non-disclosure clause recited in Paragraph 42 of this Second Amended Verified Complaint, the non-solicitation of employee clause recited in Paragraph 45 of this Second Amended Verified Complaint, and the non-solicitation of customer clause, recited in Paragraph 46 of this Second Amended Verified Complaint.

68. Collectively, the contracts of the Former Employees are referred to herein as the "Employment Agreements."

12

69.     Each of the Former Employees, other than Hoffman, Amara, Harrell, Bryant, and Swearengen, were responsible for soliciting new business and originating loans for SMC. Hoffman and Bryant were responsible for recruiting and management functions. Amara, Harrell, and Swearengen were responsible for collecting borrower information and preparing or processing borrower loan files.

70.     In these roles, the Former Employees were exposed to SMC's clients, prospects, and confidential and proprietary information.

## V.      Novus Induces Former Employees to Steal SMC's Clients, Prospects, and Files.

71.     At some point in 2025, Novus recruited the Former Employees to leave their employ with SMC and become employed by Novus.

72.     However, rather than immediately resigning their positions and moving to Novus, the Former Employees and Novus embarked on a months-long covert scheme to divert active and prospective borrowers of SMC to Novus, while also misappropriating SMC's intellectual property, and confidential proprietary data.

73.     Between August 21, 2025 and October 10, 2025, while employed by SMC, C. Hoehn, A. Hoehn, Wagner, Goode, and Swearengin exchanged countless emails and, upon information and belief, other forms of communications with Novus employees directed at one illicit effort: the diversion of SMC's active borrowers and prospective clients to Novus.

74.     These emails included highly sensitive proprietary data used by SMC to compete with the likes of Novus.

### A.      *Ashley Hoehn and Chris Hoehn*

75.     On August 21, 2025, C. Hoehn sent an email to Coby Matush ("Matush") at Novus attaching a confidential SMC loan estimate for a borrower. A copy of the email is attached as

13

**Exhibit S**.

76.     On August 22, 2025, C. Hoehn exchanged emails with Matush regarding the "DR" loan. A copy of the email is attached as **Exhibit T**.

77.     On August 25, 2025, C. Hoehn again exchanged correspondence with Matush regarding the DR purchase loan. A copy of the email is attached as **Exhibit U**.

78.     On September 3, 2025, Taylor Mims ("Mims") at Novus emailed C. Hoehn and A. Hoehn asking for a borrower's paystubs and W-2's. A copy of the email is attached as **Exhibit V**.

79.     On September 3, 2025, C. Hoehn emailed Alabama Central Credit Union informing them of his new job at Novus, even though he was still employed at SMC. A copy of the email is attached as **Exhibit W**.

80.     On September 4, 2025, C. Hoehn emailed Matush asking if a client uploaded the items to pay for an appraisal on a purchase loan. A copy of the email is attached as **Exhibit X**.

81.     On September 5, 2025, Mims emailed A. Hoehn and C. Hoehn a conditional approval for a client's loan. A copy of the email is attached as **Exhibit Y**.

82.     On September 5, 2025, Matush, C. Hoehn, and A. Hoehn exchanged emails regarding prices for another loan at Novus. Copies of the emails are attached as **Exhibit Z**.

83.     On September 5, 2025, A. Hoehn emailed Matush asking for estimates on a borrower file he originated at Novus. A copy of the email is attached as **Exhibit AA**.

84.     On September 5, 2025, A. Hoehn sent an email to Novus regarding another borrower contract. A copy of the email is attached as **Exhibit BB**.

85.     On September 7, 2025, C. Hoehn sent an email to a borrower telling the borrower to send documents to C. Hoehn's Novus email address. A copy of the email is attached as **Exhibit CC**. C. Hoehn also instructed the borrower to fill out a mortgage application through Novus's

website and falsely told the client that SMC was being "acquired" by Novus. *Id*. In the same email, C. Hoehn stated that he has "already worked several loans together" with Novus. *Id*.

86.     On September 7, 2025, Matush emailed A. Hoehn enclosing prequalification letters for a borrower's loan file. A copy of the email is attached as **Exhibit DD**.

87.     On September 7, 2025, A. Hoehn sent an email to a borrower enclosing purchase loan prequalification letters. *Id.*

88.     On September 8, 2025, C. Hoehn sent Matush a borrower's pay stub. A copy is attached as **Exhibit EE**.

89.     On September 9, 2025, Matush sent C. Hoehn and A. Hoehn pre-approval documents for a borrower's loan. A copy of the email is attached as **Exhibit FF**.

90.     On September 11, 2025, Mims sent C. Hoehn and A. Hoehn loan appraisal information for a borrower. A copy is attached as **Exhibit GG**.

91.     On September 22, 2025, A. Hoehn exchanged emails with Matush enclosing a link to client documents for a loan. A copy is attached as **Exhibit HH**. That same day, Matush emailed C. Hoehn and A. Hoehn preapproval for the loan. A copy of the email is attached as **Exhibit II**.

92.     On September 22, 2025, Debbie Noble ("Noble") at Novus emailed C. Hoehn and A. Hoehn conditional approval documents for the a loan. A copy of the email is attached as **Exhibit JJ**.

93.     On September 22, 2025, Noble emailed C. Hoehn and A. Hoehn conditional approval documents for a loan. A copy of the email is attached as **Exhibit KK**. C. Hoehn replied to the email saying that he and A. Hoehn would both be "onboarding tomorrow" so that it would "finally be official."

94.     On September 22, 2025, Matush emailed A. Hoehn and C. Hoehn preapproval for

more loans. A copy is attached as **Exhibit LL**. Matush replied with estimates for two other loans and promised to provide documents for two additional loans in a separate email.

### B.    *Eric Wagner*

95.    On September 6, 2025, while still employed at SMC, Wagner emailed Matush confidential information regarding an SMC borrower/client on a "DSCR" loan. A copy of the email is attached as **Exhibit MM**.

### C.    *Adam Goode*

96.    On September 25, 2025, Goode received an email from Matush asking for Goode to have his client to fill out an "intent to withdraw" form allowing the client to move its loan from SMC to Novus. A copy of the email is attached as **Exhibit NN.**

97.    On September 26, 2025, Goode sent an email to a borrower/client with a link to share documents with Novus. A copy of the email is attached as **Exhibit OO**.

98.    On October 8 and 9, 2025, Goode exchanged emails with Matush regarding documents and information, including loan pricing, for an SMC client's purchase loan. Copies of the emails are attached as **Exhibit PP**.

99.    On October 9, 2025, Goode sent an email to Matush instructing him to "go with the 6.25%" rate, in reference to an SMC borrower's purchase loan that was moving to Novus. A copy of the email is attached as **Exhibit QQ**.

100.    On October 10, 2025, Realtor Kayla Wash sent an email to Matush enclosing contracts and referencing "a client that Adam Goode is working with." A copy of the email is attached as **Exhibit RR**. The client had already started the pre-approval process at SMC.

101.    On October 10 and 13, 2025, Goode exchanged emails with Matush regarding pricing and documentation for a loan Goode brought from SMC to Novus. Copies of the emails

16

are attached as **Exhibit SS**.

102.    On October 14, 2025, Goode emailed Clay Brown at Novus enclosing a Letter of Explanation for a loan. A copy of the email is attached as **Exhibit TT**.

103.    On October 15, 2025, Goode receive another email from Matush with an update on disclosures for a purchase loan. A copy of the email is attached as **Exhibit UU**.

### D.    *Amber O'Rear*

104.    On October 7, 2025, O'Rear received multiple emails from Ashley Johnson ("Johnson") at Novus regarding a purchase loan file that she had moved from SMC to Novus for processing, underwriting and approval. Copies of the emails are attached as **Exhibit VV**.

105.    Also on October 7, 2025, Johnson sent O'Rear an email congratulating O'Rear because an SMC client's purchase loan was moving to the processing stage at Novus. A copy of the email is attached as **Exhibit WW**.

106.    On October 9, 2025, O'Rear and Johnson exchanged several emails regarding the underwriting process, termite inspection, Veteran Buyer clause, and conditional approval for a purchase loan O'Rear brought from SMC to Novus. Copies of the emails are attached as **Exhibit XX**.

107.    On October 9, 2025, Johnson and O'Rear exchanged emails regarding outstanding items needed in order to submit an SMC client's purchase loan for underwriting at Novus. Copies of the emails are attached as **Exhibit YY**.

108.    On October 10, 2025, Matush sent O'Rear an email regarding pricing for a loan brought to Novus from SMC. A copy of the email is attached as **Exhibit ZZ**.

### E.    *Leslie Swearengin*

109.    On October 10, 2025, Swearengin (who, at that point, was employed by Novus)

received an email from Goode (who was still employed at SMC) with information needed to move a loan to Novus. A copy of the email is attached as **Exhibit AAA**.

F.    ***Jennifer Detulleo***

110.    In the second and third quarters of 2025, Detulleo had approximately 15-20 customer and prospective customer credit pulls per month, which suddenly dropped to only 1 credit pull in October 2025, the month she resigned her employment with SMC. Upon information and belief, she was sending these files to Novus.

## VI.    SMC Investigates Theft of Confidential Information.

111.    In the third quarter of 2025, SMC noticed the number of customer and prospective customer credit pulls (a primary indicator of whether loan originators have originated new consumer mortgage loans) for by the Hoffman Branches dropped significantly and below normal levels.

112.    In July and August, Hoffman's branches had 166 and 145 unique credit pulls respectively. However, those numbers dropped to 119 and 43 in September and October, respectively, suggesting that employees were not soliciting new loans and/or were diverting loans to a competitor.

113.    Accordingly, SMC conducted an internal investigation that identified the foregoing email communications that had been sent and/or received on the Former Employees' SMC-issued computers, evidencing that the Former Employees were actively diverting, soliciting, and/or serving borrowers on behalf of Novus while still employed with SMC.

114.    Additionally, via the investigation it became apparent that Hoffman exported confidential and proprietary datasets maintained in DOMO, SMC's information management SaaS application, on multiple occasions throughout 2025.

18

115.    For example, on September 18, 2025, Hoffman exported loan application data (such as borrower contact information), and consumer leads for the entire time he had worked at SMC.

116.    On October 13, 2025, Hoffman exported loan data for all loans originated by all employees in his branches, as well as borrower information about all such loans *and* for all borrowers for which any loan originator on his team had ever originated a loan for at SMC. This included thousands of borrower datasets.

117.    Hoffman also exported similar datasets on March 4, April 1, April 22, April 28, June 16, June 24, June 26, August 31, September 12, September 18, September 28,  September 29 and October 15.

118.    Hoffman exported the DOMO dataSETS outside of SMC's systems and onto his personal computer.

119.    Hoffman had no valid business purpose for exporting SMC's confidential and proprietary datasets from DOMO.

120.    His sole purpose in exporting SMC's confidential and proprietary data was to provide it to Novus and use it for personal gain and to undercut SMC's competitive advantage in the market place.

121.    Novus did nothing to prevent Hoffman and the other Former Employees from importing the aforementioned SMC proprietary data into its systems (and actually aided and encouraged it), so that it could profit from the property and information that did not belong to it.

**VI.    The Former Employees Leave SMC to Work in an Identical Capacity at Novus.**

122.    Sherrell resigned her employment with SMC on September 12, 2025.

123.    Kidd resigned her employment with SMC on September 12, 2025.

124.    A. Hoehn and C. Hoehn both resigned their employment with SMC on September

22, 2025.

125.    Amara resigned her employment with SMC on September 23, 2025.

126.    Leopard resigned her employment with SMC on September 26, 2025.

127.    Swearengin resigned her employment with SMC on September 26, 2025.

128.    As a result of these resignations (and those identified below), SMC was forced to permanently close the following four branches in part because there were no employees remaining to work at those locations: (i) on October 2116 Church Street, Rainbow City, Alabama; (ii) 228 Holmes Ave, Huntsville, Alabama; (iii) 37 Hughes Road, Suite A, Madison, Alabama; and (iv) 4205 Balmoral Drive, Suite 100, Huntsville, Alabama.

129.    SMC's landlord suddenly cancelled SMC's leases on two of these properties (37 Hughes Road, Suite A in Madison, Alabama; and 4205 Balmoral Drive, Suite 100 in Huntsville, Alabama) despite SMC fulfilling all obligations under the leases, suggesting that Novus and/or the Individual Defendants may be interfering with the leases.

130.    All of the aforementioned branch closures occurred during the timeframe between September 26, 2025 through October 24, 2025.

131.    On October 16, 2025, SMC sent a letter to Hoffman instructing him to bring his computer on which he performed SMC business to his branch the next morning, on October 17, 2025, as part of a meeting with a representative from SMC's IT department.

132.    Upon receiving the letter, on October 16, 2025, Hoffman told SMC's Head of IT that he would not do so. On the same day, Hoffman also told his Divisional Manager that he would not be returning to work, and that it was possible nobody from his team would be returning to work.

133.    That same day, on October 16, 2025, Hoffman resigned his employment with SMC.

134.    The next day, on October 17, 2025, O'Rear resigned her employment with SMC. She did not tell SMC where she was going to work.

135.    On October 17, 2025, SMC interviewed Goode about his transmission of confidential information to Novus. Following the interview, SMC terminated Goode's employment, effective October 17, 2025.

136.    SMC also interviewed Wagner on October 17, 2025. When confronted with information about his breaches of confidentiality, Wagner did not deny his violations. Following the interview, SMC terminated Wagner's employment, effective October 17, 2025.

137.    Harrell resigned her employment with SMC on October 17, 2025.

138.    Bryant resigned his employment with SMC on October 20, 2025.

139.    Farmer resigned his employment with SMC on October 20, 2025.

140.    Detulleo resigned her employment with SMC on October 29, 2025.

141.    Blagburn resigned her employment with SMC on October 29, 2025.

142.    McEwen resigned her employment with SMC on October 30, 2025.

143.    Dougherty resigned her employment with SMC on October 31, 2025.

144.    Upon information and belief, the Former Employees have all accepted employment with Novus and/or are actively employed by Novus in the same or similar roles as they held at SMC.

145.    Upon information and belief, as the Branch Manager, Hoffman solicited and/or encouraged the other Former Employees to leave their employ with SMC and accept employment with Novus as part of a broad scheme to divert business to Novus.

**VII.    A. Hoehn, Dougherty, and Hoffman Fail to Return Funds owed to SMC.**

146.    A. Hoehn's employment agreement provided the following guarantee and

recoverability for non-retention clauses:

> Guarantee. In addition to the other compensation payable to Employee hereunder, Company shall pay Employee a semi-monthly amount equal to $6,250.00 (the "Guarantee"), for the first 4 months of Employee's employment. The Guarantee shall be paid in accordance with regular Company payrolls, subject to the provisions of Sub-Section (ii) below.

> Recoverability for Non-Retention. Notwithstanding Sub-Sections (i) above, Employee shall not earn any Guarantee, Signing Bonus until Employee has been employed in good standing by Company for a minimum of 24 months; provided, however, that Company shall advance such amounts to Employee in accordance with Sub-Sections I. F. (i) above. If Employee leaves the employment of Company, whether voluntarily or involuntarily, prior to May 28, 2026, Employee agrees to return all amounts of the Guarantee, Signing Bonus ("Recoverable Amounts") paid by Company under this Exhibit A; provided, however, that under no circumstances will Employee receive less than the minimum amount per workweek required by applicable local, state, and federal law.

Ex. C at Ex. A, § I(F)(i)-(ii).

147. Pursuant to her employment agreement, A. Hoehn received the guarantee payments from SMC.

148. A. Hoehn resigned from her employment with SMC on September 22, 2025.

149. A. Hoehn was not actively employed by SMC through the retention period (i.e., through May 28, 2026) and thus the guaranteed payments are recoverable by SMC.

150. On October 23, 2025, SMC sent a demand for repayment notice to A. Hoehn, requesting repayment of the guaranteed payments in an amount of $24,938.14. A copy of the demand letter is attached as **Exhibit BBB**.

151. To date, A. Hoehn owes SMC $24,938.14 in recoverable guarantee funds.

152. Dougherty's employment agreement provided the following signing bonus and recoverability for non-retention clauses:

Signing Bonus. In consideration of Employee's execution of this Exhibit A and the related Employment Agreement, Company shall pay Employee an initial sign-on bonus of $10,250 (the "Signing Bonus") payable in the first regularly scheduled payroll period after hire. Thereafter, following the first $1.5M in closed loan volume by Employee in the first 90 days, the Company shall pay Employee a bonus of $7,500 in the first regularly schedule payroll period after 90 days, subject to the provisions of Sub-Section (ii) below.

Recoverability for Non-Retention. Notwithstanding Sub-Sections (i), Employee shall not earn any Signing Bonus until Employee has been employed in good standing by Company for a minimum of 24 months; provided, however, that Company shall advance such amounts to Employee in accordance with Sub-Sections I. F. (i) above. If Employee leaves the employment of Company, whether voluntarily or involuntarily, prior to July 15, 2026, Employee agrees to return all amounts of the Signing Bonus ("Recoverable Amounts") paid by Company under this Exhibit A; provided, however, that under no circumstances will Employee receive less than the minimum amount per workweek required by applicable local, state, and federal law.

Ex. R at Ex. A, § I(F)(i)-(ii).

153.    Dougherty resigned her employment with SMC on October 31, 2025.

154.    Dougherty was not actively employed by SMC through the retention period (i.e., through July 15, 2026), thus the signing bonus is recoverable by SMC.

155.    On November 14, 2025, SMC sent a demand for repayment notice to Dougherty, requesting repayment of the signing bonus in an amount of $13,046.71. A copy of the demand letter is attached as **Exhibit CCC**.

156.    To date, Dougherty owes SMC $13,046.71 for the outstanding recoverable signing bonus funds.

157.    SMC provided Hoffman with three loans during his employment.

158.    On May 25, 2023 SMC loaned Hoffman $125,000 in the form of an unsecured promissory note ("Note 1"). A copy of Note 1 is attached as **Exhibit DDD.**

23

159.   Note 1 provided that 25% of the original balance of the note would be forgiven each year, over a four year period, if Hoffman remained continuously employed by SMC during that period.

160.   On the first anniversary of Note 1 (May 25, 2024), SMC forgave $31,250 of outstanding debt on Note 1, and on the second anniversary of Note 1 (May 25, 2025), SMC forgave another $31,250 of the outstanding debt on the note.

161.   On August 11, 2023, SMC loaned Hoffman $125,000 in the form of an unsecured promissory note ("Note 2"). A copy of Note 2 is attached as **Exhibit EEE.**

162.   Note 2 provided that 25% of the original balance would be forgiven each year, over a four year period, if Hoffman remained continuously employed by SMC.

163.   On the first anniversary of Note 2 (August 11, 2024), SMC forgave $31,250 of the outstanding debt on Note 2, and on the second anniversary of Note 2 (August 11, 2025), SMC forgave another $31,125 of the outstanding debt on Note 2.

164.   On December 15, 2024, SMC loaned Hoffman $30,000 in the form of an unsecured promissory note ("Note 3"). A copy of Note 3 is attached as **Exhibit FFF**.

165.   Note 3 was non-forgivable with a maturity date of June 15, 2025.

166.   To date, Hoffman owes SMC $56,850.72 for the unpaid principal balance of Note 1.

167.   To date, Hoffman owes SMC $62,500 for the unpaid principal balance of Note 2.

168.   To date, Hoffman owes SMC the full original principal balance of $30,000 for Note 3.

169.   On October 23, 2025, SMC sent a notice of acceleration of debt to Hoffman, requesting payment of these outstanding debts. A copy of the notice of acceleration of debt letter

is attached as **Exhibit GGG**.

170.    Nonetheless, Hoffman has failed to repay the debts.

**COUNT I**
**Breach of Contract**
**Against A. Hoehn, C. Hoehn, Wagner, Goode, O'Rear, Swearengin, Detulleo, and Dougherty**

171.    SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

172.    The Employment Agreements are valid and enforceable contracts between SMC and each of the Former Employees, respectively.

173.    The Former Employees received valid consideration in exchange for agreeing to the restrictive covenants in the Employment Agreements, including initial employment, training, experience, and wages.

174.    A. Hoehn, C. Hoehn, E. Wagner, A. Goode, A. O'Rear, L. Swearengin and J. Detulleo breached the Duty of Loyalty clause in their Employment Agreements by working for a competing mortgage lender while employed by SMC.

175.    A. Hoehn, C. Hoehn, E. Wagner, A. Goode, A. O'Rear, L. Swearengin and J. Detulleo breached the non-disclosure clause in their Employment Agreements by providing SMC's confidential and proprietary materials, including but not limited to borrower data, to Novus.

176.    A. Hoehn, C. Hoehn, E. Wagner, A. Goode, A. O'Rear, L. Swearengin and J. Detulleo breached the non-solicitation of customers clause in their Employment Agreements by, among other things:

a.    sending SMC's confidential lender information to Novus;

b.    directly or indirectly soliciting SMC's existing borrowers to move their accounts

25

from SMC to Novus; and

c.   directly or indirectly soliciting SMC's prospective borrowers to apply for loans with Novus instead of SMC.

177.   As a direct and proximate result of the foregoing breaches, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

178.   Specifically, so far, at least four known borrowers (for whom SCM already issued preapproval letters) have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

179.   Damages are ongoing and continue unabated at the time of the filing of this Second Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

180.   Additionally, A. Hoehn and Dougherty breached their employment agreements by failing to repay sums owed to SCM.

181.   Specifically, to date, A. Hoehn owes SMC $24,938.14, due to her breach of her employment agreement's recoverability and non-retention clauses.

182.   Likewise, to date, Dougherty owes SMC $13,046.7, due to her breach of her employment agreement's recoverability and non-retention clauses.

**COUNT II**
**Breach of Contract – Manager Agreement**
**Against Hoffman**

183.   SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

184.   The Manager Agreement is a valid and enforceable contract between SMC and

26

Hoffman.

185.    Hoffman received valid consideration in exchange for agreeing to the restrictive covenants in the Manager Agreement, including initial employment, training, experience, and wages.

186.    Hoffman breached the non-disclosure clause in the Manager Agreement by providing SMC's confidential and proprietary materials, including but not limited to borrower information, to Novus.

187.    Hoffman breached the non-solicitation of customers clause in the Manager Agreement by, among other things:

    a.    sending SMC's confidential lender information to Novus;

    b.    directly or indirectly soliciting SMC's existing borrowers to move their accounts from SMC to Novus; and

    c.    directly or indirectly soliciting SMC's prospective borrowers to apply for loans with Novus instead of SMC.

188.    Hoffman breached the non-solicitation of employees clause in the Manager Agreement by soliciting the Former Employees to leave their employ with SMC and accept employment with Novus.

189.    As a direct and proximate result of the foregoing breaches, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

190.    Specifically, to date, at least four known borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

191.    Damages are ongoing and continue unabated at the time of the filing of this Second

Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

## COUNT III
### Breach of Contract – Promissory Notes
### Against Hoffman

192.    SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

193.    Hoffman  entered into three promissory notes for loans received from SMC: Note 1, Note 2 and Note 3 (collectively, the "Promissory Notes").

194.    The Promissory Notes are each valid and enforceable contracts between SMC and Hoffman.

195.    Hoffman received valid consideration in exchange for agreeing to the terms and conditions of the Promissory Notes, including receiving payments of $125,000 for Note 1, $125,000 for Note 2, and $30,000 for Note 3.

196.    Hoffman breached Note 1 by failing to repay $56,850.72 due and owing to SMC as a result of Hoffman's voluntary resignation prior to the four-year loan forgiveness period.

197.    Hoffman breached Note 2 by failing to repay $62,500 due and owing to SMC as a result of Hoffman's voluntary resignation prior to the four-year loan forgiveness period.

198.    Hoffman breached Note 3 by failing to repay $30,000 due and owing to SMC as per the terms and conditions of the promissory note.

199.    As a result of Hoffman's breaches of the Promissory Notes, to date, Hoffman owes $149,350.72 to SMC, not including interest and attorneys' fees.

200.    Each of the Promissory Notes provide that if Hoffman ceased to timely repay the amounts owed, interest would accrue on the underlying principal at a rate of 4% per annum from the date Hoffman ceased to be employed with SMC.

28

201.    Each of the Promissory Notes further provide that, in the event suit is brought to collect unpaid sums thereunder, Hoffman shall pay SMC's reasonable costs and expenses of collecting or attempting to collect the amounts owed under the Promissory Notes, including, but not limited to, reasonable attorneys' fees incurred by SMC.

**COUNT IV**
**Breach of Fiduciary Duty**
**Against Hoffman, Amara, A. Hoehn, C. Hoehn, Sherrell, Leopard, Goode, Wagner, Swearengin, Kidd, O'Rear, Harrell, Farmer, Bryant, Detulleo, Dougherty, Blagburn and McEwen**

202.    SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

203.    As employees of SMC, the Former Employees owed a fiduciary duty to SMC.

204.    The Former Employees breached the their fiduciary duties by, among other things:

a.    providing SMC's confidential and proprietary materials, including but not limited to borrower data, to Novus;

b.    directly or indirectly soliciting SMC's existing borrowers to move their accounts from SMC to Novus; and

c.    directly or indirectly soliciting and/or encouraging SMC's prospective borrowers to apply for loans with Novus instead of SMC.

205.    As a direct and proximate result of the Former Employees' breaches, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

206.    Specifically, to date, at least four known borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

207.    Damages are ongoing and continue unabated at the time of the filing of this Second

29

Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

**COUNT V**
**Defend Trade Secrets Act**
**18 U.S.C. § 1836, *et seq*.**
**Against Novus, Hoffman, Goode, Wagner, Swearengin, O'Rear, A. Hoehn, and C. Hoehn**

208.    SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

209.    SMC's borrower files are used in a trade or business, not publicly or generally known, cannot be readily ascertained or derived from publicly available information, and have significant economic value.

210.    SMC takes sufficient and reasonable measures to maintain the secrecy of its borrower files.

211.    The Former Employees, by the virtue of their roles with SMC, had access to SMC's borrower files that other personnel at SMC did not have access to or knowledge of.

212.    Hoffman, Goode, Wagner, O'Rear, A. Hoehn, and C. Hoehn misappropriated SMC's trade secrets by providing the confidential borrower information and documents to Novus in order to redirect SMC's borrowers/clients to deal with Novus instead of SMC.

213.    Novus misappropriated SMC's trade secrets by accepting and using the confidential borrower documents and information provided by Hoffman, Goode, Wagner, O'Rear, Detulleo, A. Hoehn, and C. Hoehn in order to steal SMC's borrowers/clients, despite knowing the information was confidential property of SMC.

214.    The actions of Novus, Hoffman, Goode, Wagner, O'Rear, A. Hoehn, and C. Hoehn described herein were willful and malicious.

215.    As a direct and proximate result of the foregoing actions, SMC has suffered and

30

will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

216. Specifically, to date, at least four known borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

217. Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

**COUNT VI**
**Alabama Trade Secrets Act Against**
**Against Novus, Hoffman, Goode, Wagner, Swearengin, O'Rear, A. Hoehn, and C. Hoehn**

218. SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

219. SMC derives independent economic value from its borrower data and files, which it lawfully owns.

220. SMC takes sufficient and reasonable measures to maintain the secrecy of its borrower data and files.

221. The Former Employees, by the virtue of their roles with SMC, had access to SMC's borrower data and files that other personnel at SMC did not have access to or knowledge of and had a duty to maintain the secrecy thereof.

222. Hoffman, Goode, Wagner, O'Rear, A. Hoehn, and C. Hoehn misappropriated SMC's trade secrets by providing the confidential borrower documents and information to Novus in order to redirect SMC's borrowers/clients to deal with Novus instead of SMC.

223. Novus misappropriated SMC's trade secrets by accepting and using the confidential borrower information and documents provided by Hoffman, Goode, Wagner, O'Rear, A. Hoehn,

31

and C. Hoehn in order to steal SMC's borrowers/clients, despite knowing the information was confidential property of SMC.

224. The actions of Novus, Hoffman, Goode, Wagner, O'Rear, A. Hoehn, and C. Hoehn described herein were willful and malicious.

225. As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

226. Specifically, to date, at least four borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

227. Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

## COUNT VII
### Conversion
**Against Novus, Hoffman, Goode, Wagner, Swearengin, O'Rear, Detulleo, A. Hoehn, and C. Hoehn**

228. SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

229. SMC owns its borrowers files and documents and has an immediate right to possession of the same.

230. The Former Employees converted SMC's property by taking them, without authorization, and sending them to Novus in order to steal SMC's active and prospective borrowers/clients.

231. Novus converted SMC's property by accepting and using SMC's borrower files and documents to steal SMC's active and prospective borrowers/clients.

232. As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

233. Specifically, to date, at least four borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

234. Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

## COUNT VIII
### Tortious Interference With Business Relationship
**Against Hoffman, Amara, A. Hoehn, C. Hoehn, Sherrell, Leopard, Goode, Wagner, Swearengin, Kidd, O'Rear, Harrell, Farmer, Bryant, Detulleo, Dougherty, Blagburn and McEwen**

235. SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

236. SMC had protected business relationships borrowers/clients.

237. The Former Employees had knowledge of SMCs protected business relationships with its borrowers/clients, having been the ones who originated such loans.

238. The Former Employees intentionally interfered with SMC's protected business relationships with its borrowers/clients without justification by diverting the borrowers/clients to Novus and failing to disclose to the borrowers/clients that the Former Employees were still employed by SMC.

239. As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

33

240.    Specifically, to date, at least four known borrowers (for whom SMC already issued preapproval letter) have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees.

241.    Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

## COUNT IX
## Tortious Interference With Business Relationship
## Against Novus

242.    SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

243.    The Employment Agreements were valid and enforceable contracts between the Former Employees and SMC.

244.    SMC has protected business relationships with its borrowers/clients and has an expectancy in the continuance of its these business relationships (which expectancy includes not only the initial mortgage loan, but loan servicing income thereafter, and future refinances of its portfolio clients).

245.    Novus had knowledge of the Employment Agreements and of SMC's protected business relationships with its borrowers/clients.

246.    Novus intentionally interfered with the Employment Agreements by

   a.    encouraging, inducing, and aiding the Former Employees to breach the non-disclosure and non-solicitation clauses in the Employment Agreements; and

   b.    encouraging and assisting the Former Employees in directly or indirectly soliciting SMC's employees to leave their employment at SMC and accept

34

employment with Novus despite knowing the Former Employees were bound by no-hire and non-solicitation clauses standard to the industry;

247. Novus intentionally interfered with SMC's protected business relationships with its borrowers/clients without justification by:

   a.   encouraging and assisting the Former Employees in diverting and SMC's borrowers/clients to Novus despite knowing the Former Employees were still employed by SMC and bound by non-solicitation clauses standard in the industry; and

   b.   soliciting and accepting business from SMC's borrowers/clients despite knowing that such business was obtained through stolen SMC property and information and breach of the Employment Agreements.

248. As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

249. Specifically, to date, at least four known borrowers (for whom SMC had already issued preapproval letters) have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees and at least sixteen SCM employees have terminated their employment with SMC in order to become employed by Novus.

250. Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

**COUNT X**
**Tortious Interference With Business Expectancy**
**Against All Defendants**

251. SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

252. SMC's relationships with its current and prospective borrowers are protectable business relationships.

253. SMC had an expectancy in the continuance of its relationships with its current and prospective borrowers (which expectancy includes not only the initial mortgage loan, but loan servicing income thereafter, and future refinances of its portfolio clients).

254. Defendants were and are aware of SMC's relationships with its current and prospective borrowers.

255. Defendants are not parties to SMC's relationships with its current and prospective borrowers.

256. Defendants intentionally interfered with SMC's relationships with its current and prospective borrowers by diverting such relationships from SMC to Novus.

257. As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

258. Specifically, SMC's current and prospective borrowers have agreed to take out loans from Novus instead of SMC.

259. Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

**COUNT XI**
**Aiding and Abetting**
**Against Novus**

36

260. SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amended Verified Complaint as if fully set forth herein.

261. Novus knowingly and substantially assisted the Former Employees in breaching the non-solicitation, no-hire, and non-disclosure clauses in the SMC Agreements.

262. Novus knowingly and substantially assisted the Former Employees in breaching their fiduciary duties and other legal duties to SMC.

263. As evidenced by (i) the numerous communications between Novus and the Former Employees in furtherance of diverting SMC's borrowers/clients to Novus, (ii) the hyperlinks Novus sent to the Former Employees to facilitate their intake of applications for Novus (while they were still employed by SMC), and (iii) Novus's facilitation of the transfer of confidential and proprietary information through its systems, Novus was aware of its role as part of an overall improper scheme at the time that it provided assistance to the Former Employees.

264. As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

265. Specifically, to date, at least four borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees and at least sixteen SMC employees have been poached by Novus through the Defendants' hiring and solicitation efforts in violation of the Employment Agreements.

266. Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified Complaint, thus necessitating the imposition of preliminary and permanent injunctive relief.

**COUNT XII**
**Civil Conspiracy**

**Against All Defendants**

267.    SMC incorporates and realleges Paragraphs 1 through 170 of this Second Amened Verified Second Amended Complaint as if fully set forth herein.

268.    Novus and the Former Employees engaged in concerted action to carry out tortious acts against SMC by unlawfully diverting SMC's current and prospective clients to Novus, interfering with SMC's contractual relations by soliciting and hiring SMC employees, and interfering with SMC's expectancy of continued business relationships with its current and prospective clients.

269.     By diverting SMC's active and prospective clients from SMC to Novus, the Former Employees violated the non-disclosure and non-solicitation clauses in the SMC Agreements.

270.    By diverting SMC's active and prospective clients from SMC to Novus, Defendants tortiously interfered with SMC's existing and expected business relationships.

271.    By soliciting and hiring SMC employees to work for Novus, Defendants violated the no-hire and non-solicitation of employees clauses in the Employee Agreements and/or tortiously interfered with these contracts.

272.    By diverting SMC current and/or prospective clients to Novus, and mischaracterizing the nature of SMC and Novus's relationship, Defendants interfered with SMC's protected business relationships and prospective business expectancy.

273.    The foregoing scheme was unlawful and achieved by unlawful means.

274.    As a direct and proximate result of the foregoing actions, SMC has suffered and will continue to suffer irreparable harm and loss, and has sustained damages, including without limitation, loss of profits and goodwill, in an amount to be determined at trial.

275.    Specifically, to date, at least four borrowers have transferred their accounts from SMC to Novus as a result of the actions of the Former Employees and at least sixteen SMC employees have terminated their employment with SMC due to Defendants' hiring and solicitation efforts in violation of the Employment Agreements.

276.    Damages are ongoing and continue unabated at the time of the filing of this Second Amended Verified, thus necessitating the imposition of preliminary and permanent injunctive relief.

WHEREFORE, Plaintiff Stockton Mortgage Corporation respectfully requests that the Court:

A.    Enter judgment in its favor and against Defendants;

B.    Award it compensatory damages in an amount to be determined at trial in excess of $75,000;

C.    Award it exemplary, punitive, and liquidated damages in an amount to be determined at trial;

D.    Award it pre-judgment and post-judgment interest;

E.    Awarding it reasonable attorneys' fees and costs incurred herein;

F.    Enter emergency, preliminary, and permanent injunctive relief; and

G.    Grant it such other relief as the Court deems just and proper.

Date: March 3, 2026

Respectfully Submitted,

**MAYNARD NEXSEN PC**

By: */s/ W. Brock Phillips*
1901 Sixth Avenue N, Suite 1700
Birmingham, AL 35203

39

(205) 254-1981
bphillips@maynardnexsen.com

**SAUL EWING LLP**

By:/s/ *Francis X. Riley III*
Francis X. Riley III (*pro hac vice*)
650 College Road East, Suite 4000
Princeton, NJ 08540
(609) 452-3150
francis.riley@saul.com

Alexander L. Reich (*pro hac vice*)
Krystina Garda (*pro hac vice*)
161 N. Clark St.
Suite 4200
Chicago, Illinois 60601
(312)-876-6925
alexander.reich@saul.com
krystina.garda@saul.com

*Attorneys for Plaintiff Stockton Mortgage Corporation*

40

## **VERIFICATION**

I, ANTHONY WHITESIDE,  Chief Corporate Officer of Stockton Mortgage Corporation ("SMC"), verify that I am authorized to make this verification on behalf of SMC, I have read the foregoing Second Amended Verified Complaint that was prepared with the assistance and advice of counsel, and I declare under penalty of perjury that the factual allegations in the foregoing Second Amended Verified Complaint are true and correct.

Executed via DocuSign on Franklin County, Kentucky.

DocuSigned by:

*Anthony Whiteside*

7E6B7D3F009A479...

Anthony Whiteside

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I filed a copy of the foregoing with the Court's electronic cm/ECF filing system, which will send notification to all parties and counsel of record in this case.

*/s/ Brock Phillips*
OF COUNSEL